## National Concrete Construction Company v. Duvall, et al.

(Decided April 24, 1913.)

### Appeal from Jefferson Circuit Court (Common Pleas, First Division).

1. New Trial—Newly Discovered Evidence—Requisites of Petition.— It is not essential that a petition for a new trial on the ground of newly discovered evidence shall set out in full the record of the old trial, or refer to, and make a part of the petition, this record. The petition will be good if it sets out with sufficient elaboration and certainty the record and proceedings in the former trial to enable the court to determine from an inspection of the petition the grounds upon which a new trial is asked, and to decide whether the newly discovered evidence, if it had been introduced on the trial, would have certainly affected the result.

2. New Trial—Newly Discovered Evidence—Affidavits—When to be Filed with Petition.—Generally when a party desires to obtain a new trial on the ground of newly discovered evidence, he should, in addition to his own affidavit, stating the reasons why the evidence was not procured and its materiality, file the affidavit of the proposed witness, setting out what he would testify to if introduced as a witness; or if this affidavit cannot be obtained, the affidavit of some other person who can state what the proposed witness would say; but when the newly discovered evidence is to be furnished by the exhibition of physical facts, or when the newly discovered evidence cannot well be made by the evidence

of witnesses, but depends on the existence of physical conditions that are peculiarly within the knowledge of the adverse party, supporting affidavits are not required.

3. New Trial—Newly Discovered Evidence.—New trials are reluctantly granted, and a new trial will not be granted on the ground of newly discovered evidence if the new evidence is merely cumulative or does not tend to prove facts which were not directly in issue on the trial; nor unless the discovered evidence will have a decisive influence on the evidence to be overturned by it.

4. New Trial—Newly Discovered Evidence—Facts Stated—In a suit to recover damages for personal injuries, the plaintiff testified that his manhood was impaired, and medical witnesses testified as to injuries to his procreative powers, but did not say they were destroyed. More than a year after the trial the wife of the complaining party became pregnant, and a new trial was sought on the ground that the evidence tending to show lost manhood was false and largely affected the verdict. Held: That as evidence of lost manhood was only one of the injuries complained of, and there was no proof that it was destroyed, the fact that a year after the trial the plaintiff had recovered from this injury, was not sufficient ground to authorize the granting of a new trial.

SHIELD & CAMPBELL and CAMDEN R. McATEE for appellants.

EDWARDS, OGDEN & PEAK for appellees.

## OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This suit was brought by the appellant company to obtain a new trial on the ground of newly discovered evidence, and thereby vacate a judgment obtained against it by the appellee, Duvall, in the court in which the petition for a new trial was filed, the proceeding being authorized by section 344 of the Civil Code, reading in part:

"If grounds for a new trial be discovered after the term at which the verdict or decision is rendered, the application may be made by a petition filed with the clerk not later than the second term after the discovery—on which a summons shall issue, as on other petitions, requiring the adverse party to appear and answer it on or before the first day of the next term."

To the petition as amended a general demurrer was filed and sustained, and the petition dismissed, so that the only question before us is, did the petition as amended, taking the averments as true, state facts sufficient to constitute a cause of action?

In 1910, Duvall brought suit against the appellant company to recover damages for personal injuries sustained by him while in its employment, the ground of his

recovery being that the injuries were due to its negligence. He averred in his petition that while engaged in the labor in which he was employed "some timbers fell upon him thereby severely and permanently injuring him upon his body, legs, hip, and injuring his kidneys and testicles and his spermatic cord, and serious injury to his back and spine and nervous system, from which he has suffered great mental and physical pain and anguish, and will so continue to suffer the remainder of his life, and was and is permanently injured."

In answer to this suit the company traversed the averments of the petition, and also pleaded contributory negligence. On the trial of the case in May, 1911, Duvall, in testifying concerning the extent and character of his injuries, after relating in detail facts tending to show that his general health and his ability to earn money were permanently impaired, described a part of his injuries as follows: "Q. Now, I will get you to state to the jury what effect this injury has had upon your manhood, Just describe it to them; that is one of the things that I want you to describe to them. A. Just the same effect as if I had been castrated. Q. Have you had any sexual desire since you were hurt? A. No, sir. Q. Have you had any sexual relations since you were hurt? A. No, sir. Q. Why? A. Because I can't get ready."

Dr. Oscar Blocher, who attended Duvall as a physician when he was injured, after describing the extent and character of his injuries generally and the manner in which they affected his health, and his ability to labor, and the pain that he suffered, was asked: "What is the spermatic cord? A. The spermatic cord is the cord that leads the semen from the testicles to the penis. Q. Now, was there any tenderness along the course of that cord? A, He complained of tenderness where that cord emerges from the upper part of the back. Q. About the testicle; was there any complaint about it? A. He told me on several occasions that his testicle had swollen during the night, but I was never able to find any swelling of the testicle. Q. Can you say whether or not the injury has affected his manhood? What we genearlly term manhood? A. Only from his own statement to me about a month ago. He came to me and asked for a———."

Dr. D. Y. Roberts, also introduced as a witness for Duvall, after describing his other injuries, was asked: "On examining the testicle, what, if anything, did you

find, A. Well, the testicle was very tender to the touch and the veins in the cord are enlarged. The testicle seemed to me to be slightly shrunken. Q. Which one? A. The right testicle. Q. The cord? What cord do you refer to? A. The spermatic cord. Q. What is the spermatic cord? A. Well, it carries the semen from the testicles to the penis, and the arteries and veins run along with it. Q. If there be an injury to the cord and to the testicle, what effect has that upon manhood, as it is commonly expressed? A. Well, of course any injury to the cord there will affect a person's manhood at any time. Q. In this instance could you tell, or is it possible for a physician to tell, whether there has been an impairment of Duvall's capacity in that particular? A. I don't think it is possible for a man to tell in an examination; no, sir. Q. Well now, assuming these to be the facts, would you say that the condition that he is in is a permanent condition or one that may be relieved? A. I could not say. Q. Why, Doctor? A. He may be relieved on an operation for that variocicele, but whether that would relieve him or not, I could not say so far as sexual powers are concerned. Q. But as to these other conditions; would an operation relieve that? A. No, sir; I could not say that it would."

When the court came to instruct the jury he directed them that if they found for Duvall, they should award him "such sum in damages as the jury may believe from the evidence will fairly and reasonably compensate him for any pain and suffering, mental and physical, which he has sustained, and which the jury may believe from the evidence it is reasonably certain he will in the future suffer as the direct result of his injuries; * * * and, if the jury believe from the evidence that his injuries are permanent, such sum as the jury may believe from the evidence will fairly and reasonably compensate him for any reduction in his power to earn money."

The jury assessed the damages in favor of Duvall in the sum of five thousand dollars, and on an appeal prosecuted to this court by the appellant company the judgment of the lower court was affirmed.

In the petition in the case for a new trial now before us, which was filed in December, 1912, the pleader, after setting out in full the petition of Duvall in the action for damages, the answer of the defendant, and the result of the trial both in the lower court and in this court, and after also setting out the evidence of Duvall and the

physicians heretofore quoted, averred that subsequent to October, 1912, it discovered that the wife of Duvall was pregnant and with child, and that the pregnancy and conception of the child occurred since the judgment was rendered, and that the condition of his wife showed conclusively that his powers of procreation had neither been impaired nor destroyed, and that the statements of Duvall when testifying as a witness in his own behalf in the suit to recover damages were false and fraudulent.

It was further averred that the newly discovered evidence, namely, the pregnancy of Duvall's wife, was not and could not have been known to it until October, 1912, when the condition of Mrs. Duvall was first observed. It was also averred that the evidence as to the alleged lost manhood of Duvall had great weight with the jury and largely influenced the verdict and especially the size of it in his favor.

The record in the suit of Duvall for damages was not made a part of the petition for a new trial, nor was any of it copied into the petition except the parts indicated, nor was the petition accompanied by any affidavits, except that it was verified by the chief officer of the company. We have set out the condition of the record at this length because of the insistence of counsel for appellee that the petition failed to conform to the rules of practice applicable to petitions for a new trial on the ground of newly discovered evidence, and for this reason alone the demurrer was properly sustained. We are further influenced to go into this matter with more detail than would ordinarily be necessary because of the apparent conflict in the cases as to what it is necessary the petition for a new trial in a case like this should show in addition to the specific averments relating to the newly discovered evidence.

In Weir v. Weir, 19 Ky. L. R., 2005, in speaking of the requisites of a petition in a case like this, the court said: "The proceedings of the old case and the trial and evidence heard thereon should have been pleaded in this case in full, or should have been made a part of the petition in some way by reference as exhibits, so as to necessarily bring that old case and the proceedings had therein before the court in this case. As this was not done, we cannot know whether this newly discovered evidence was such as to authorize a new trial in the other case."

In Rice v. Wyatt, 25 Ky. L. R., 1060, the court said: "The original record in the will case is not made a part

of the petition or proceedings in the suit for a new trial, and is not brought up on this appeal; and even if the petition did not affirmatively show that the newly discovered evidence was cumulative, the judgment would have to be reversed for the failure to bring up the original record, as it would be impossible for this court to understand the relevancy or competency of the newly discovered evidence without having the original evidence before us.'' To the same effect are: Overstreet v. Brown, 23 Ky. L. R., 317; Louisville Tobacco Warehouse Co. v. Wood, 26 Ky. L. R., 773; Johnson v. Carter, 23 Ky. L. R., 591; Reinicke v. Morse, 10 Ky. L. R., 767.

In Flint v. Illinois Central Railroad Co., 29 Ky. L. R., 1149, it is said: ''In order to state a cause of action in her petition appellant should have set forth the original cause of action, and made the pleadings and evidence therein a part of her petition as exhibits, or in some way brought them before the court.''

According to the literal reading of the opinions in these cases the petition in this case was defective because it failed to make the record in the suit of Duvall a part of the petition. But the strict and technical rule laid down in these cases has very properly been modified in Smith v. Chapman, 153 Ky., 70. In that case a demurrer was sustained to a petition seeking a new trial upon the ground that the petition was defective in not setting out at length or causing to be made a part of it the record in the case in which a new trial was sought, although the petition stated sufficient facts taken from the old case to enable the court to clearly understand the ground upon which a new trial was asked. In holding that the petition was sufficient, we said:

''It must state the facts with reference to the judgment sought to be affected with sufficient fullness and definiteness to enable the court to determine whether or not there has been a miscarriage of justice, because of casualty or misfortune, which prevented the complaining party from producing his evidence or properly presenting his case. In order to meet such requirements, it may be, and frequently is, necessary to set out all of the pleadings, steps and proceedings leading up to the judgment complained of, but this is not necessarily so. If the court can be advised of the issue tried and shown that the newly discovered evidence, had it been introduced, would most likely have produced a different result, the ends of the law are satisfied and the complainant should not be put

to the expense of making the whole of the old record a part of his pleadings. The tendency of courts is toward the simplification of pleadings, and if the requirements of the case can be complied with without making the record in the old suit a part of the new, it is a commendable practice to do so.''

Adopting this view as both reasonable and sound, and as conducing to accomplish the desired end with as little expense as may be, we think the petition in this case was sufficient, although it did not set out in full the old case or make it a part of the petition. The facts averred brought clearly to the attention of the court the grounds upon which a new trial was sought and set out with sufficient elaboration and certainty the record and proceedings in the former trial to enable the court to determine from an inspection of the petition the grounds upon which the new trial was asked, and to decide whether the newly discovered evidence, if it had been introduced on the trial, would have certainly affected the result. Every fact developed in the old case essential to an understanding of the single issue upon which a new trial was sought, was set out, and the remainder of the old record would have been a needless and expensive encumbrance.

To make this question of practice as definite as practicable, we do not wish to be understood as holding that it is not necessary in any case to make a part of the petition for a new trial the record and proceedings of the old trial, as cases might arise in which it would be necessary to set out in full all the pleadings, evidence and orders in the old case to enable the court passing on the petition for a new trial to determine whether or not a new trial should be granted. What we wish to emphasize is that in every instance so much of the proceedings in the old case must be made a part of the petition for a new trial as are necessary to enable the court to intelligently pass on the sufficiency of the petition. In other words, the party seeking a new trial must at his peril present in his petition all the facts showing the reasons why a new trial should be granted.

It is further urged as an objection to the sufficiency of the petition that it was not supported by the affidavits of the persons by whom the newly discovered evidence could be produced. It is a general rule, as stated in American Central Insurance Co. v. Hardin, 148 Ky., 246, that ''when a party desires to obtain a new trial on the ground of newly discovered evidence, he should, in addi-

tion to his own affidavit, stating the reasons why the evidence was not procured and its materiality, file the affidavit of the proposed witness, setting out what he would testify to if introduced as a witness, or if this affidavit cannot be obtained, the affidavit of some other person who can state what the proposed witness would say." Bowling v. Commonwealth, 148 Ky., 9; Bright v. Wilson, 7 B. Mon., 122; City of Dayton v. Hirth, 121 Ky., 42; Travelers' Insurance Co. v. McInerney, 119 S. W., 171.

But obviously there are cases in which a new trial may be granted to which this rule would not be applicable, as, for example, when the newly discovered evidence is to be furnished by the exhibition of physical facts, as in the case of the Louisville & Nashville Railroad Co. v. Whitley County Court, 100 Ky., 413, in which case a new trial was granted setting aside a judgment for ten thousand dollars upon the discovery that a condition in the earth that was hidden at the time of the trial demonstrated that the damage for which this large amount had been allowed could be repaired for a few hundred dollars. The present case also furnishes a good illustration of the character of case in which it is not necessary to file the affidavits usually required, as the newly discovered evidence upon which the new trial was sought could not well be made by the evidence of witnesses, as is ordinarily the case, but depended on the existence of a physical condition that was peculiarly within the knowledge of the adverse party, and so when the reason for requiring affidavits does not exist, their presence will be dispensed with.

The remaining question is, did the facts stated, taking them as true, show the appellant entitled to a new trial? In Price v. Thompson, 84 Ky., 219, certain rules were laid down governing applications for a new trial that have been uniformly adhered to, one of them being, "That the evidence discovered will tend to prove facts which were not directly in issue on the trial nor were not then known or investigated by the proof;" another, "That the new evidence is not merely cumulative;" and in Allen v. Perry, 6 Bush, 85, the further rule that has been constantly adhered to was announced that "To entitle the party to a new trial the discovered evidence must be of such permanent and unerring character as to preponderate greatly or have a decisive influence upon the evidence to be overturned by it;" and in Louisville & Nashville Railroad v. Ueltschi, 126 Ky., 556, it was further said:

"New trials are reluctantly granted; and, when disputed matters have been fully litigated, the courts will not re-open a case for the purpose of enabling the defeated party to introduce new evidence unless the reasons why it should be done are very strong and it is made to appear with reasonable certainty that injustice or wrong would result unless the relief was granted and another opportunity allowed to re-litigate the question in issue."

Applying the principles announced in these cases to the facts stated in the petition, we have reached the conclusion that the newly discovered evidence is not of such a character as would justify us under the authorities in granting a new trial. In the suit for damages Duvall did not rest his case on the injury to his spermatic cord or testicle, or on the ground that he had lost his manhood by reason of the accident. He was injured seriously in several other respects, as the evidence discloses, and the impairment of his manhood, as testified to by him, was only one of the grounds upon which he based his right of recovery. Nor did he state that this injury was permanent or do more than say that at the time of the trial he had no capacity for sexual intercourse; nor did the physicians who testified in his behalf attempt to say that the injury in this respect was permanent, or express any opinion as to how long it might continue.

In this connection it should be kept in mind as a matter of controlling importance that this testimony was given in May, 1911, and the petition charges that the pregnancy of his wife took place more than a year afterwards. During this long interval of time it is entirely reasonable that Duvall should have recovered to some extent, if not altogether, from some of the injuries he testified concerning on the trial. Nature, aided by medical skill, can accomplish wonders in a year's time, and everything to which Duvall, as well as the medical witnesses testified on the trial might have been then absolutely true. The fact that his condition subsequently improved and that his manhood was restored, furnishes little if any ground for the inference that at the time of the trial his statments were false. If a new trial should be granted in this case, then in every case in which damages for personal injuries were recovered, upon evidence that an arm or a leg or any member of the body was impaired in strength or usefulness at the time of the trial, if it could be shown that subsequent to the trial the injured member had been cured or the aches and pains from which the complaining party

suffered had been relieved, a new trial must be had. If this rule were adopted, there would be no end to litigation in this class of cases, and persons who sustained substantial injury and recovered substantial judgments would be obliged to continue in their misery, or make a pretense of it long after the trial, to avoid the expense and vexation of an attempt to take from them a recovery that under the evidence they were entitled to.

Generally when a new trial is asked on the ground of newly discovered evidence, the purpose is to correct a judgment obtained by false or misleading evidence given on the trial, and that had material weight in influencing the decision. But here the newly discovered evidence would not disprove a single fact testified to on the trial, as the manhood of Duvall may have been impaired at the time of the trial, and all that was said by both him and his medical witnesses have been true, and the injury or impairment in this respect have disappeared a year afterwards. The evidence upon which a new trial is here sought concerns things that had no existence in fact at the time of the trial, but that arose subsequent to it and did not, with any degree of certainty, tend to show that anything that took place on the trial was either false or misleading.

Manifestly a new trial should not be granted in personal injury cases merely because the party who obtained damages recovered from the effects of the injuries that existed at the time of the trial and that were the basis of the recovery in his behalf, unless it should be made clear that the evidence on the trial showed with certainty that the injuries were permanent or incurable, and that this evidence had a controlling effect on the decision and that subsequent events established that they were neither permanent nor incurable. We had this precise situation before us lately in the case of Anshutz v. Louisville Railway Co., 152 Ky., 741. In that case the material evidence in behalf of the plaintiff, Mrs. Anshutz, in a personal injury action proved that the injury received by . Mrs. Anshutz had destroyed her ability to bear children and had further developed a tumor that must be removed by a serious and dangerous operation. On the strength of this uncontradicted and controlling evidence Mrs. Anshutz recovered a substantial sum, and a new trial was granted upon it being made to appear that several months

after the trial Mrs. Anshutz gave birth to a child and that the alleged tumor was in fact a foetus.

We think the petition was properly dismissed and the judgment is affirmed.