## Mason, Evans & Keys v. Meloan.

### Same v. Same.

(Decided June 18, 1915.)

## Appeals from McCracken Circuit Court.

1. New Trial—Petition for—Affidavit Not Necessary.—When a new trial on account of newly discovered evidence is sought by a petition under Section 344 of the Civil Code, it is not necessary that the petition should be accompanied by affidavits. If the petition states good grounds for a new trial and an answer is filed, the parties may take the evidence either by depositions or by witnesses examined in court.

2. New Trial—Under Section 340 of the Code—Newly Discovered Evidence.—If a new trial for newly discovered evidence is sought by motion under Section 340 of the Code and within the time allowed by Section 342, then, as provided in Section 343, the grounds for the new trial must be supported by affidavit.

3. New Trial—Newly Discovered Evidence.—Where surgeons were unable, on account of conditions that developed during the operation, to complete an eporation for goitre, and were afterwards sued for malpractice and a judgment obtained against them, a new trial should have been granted when it was developed by the newly discovered evidence that a cancerous condition of the goitre prevented a successful operation, and this condition was not known to or discoverable by the surgeons who performed the operation.

BERRY & GRASSHAM and STANFIELD & STANFIELD for appellants.

HENDRICK & NICHOLS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL —Affirming one appeal and reversing the other.

The appellee, Julia Meloan, in a suit to recover damages for the alleged malpractice of the appellants, Mason, Evans & Keys, who are physicians and surgeons, recovered a judgment for $3,500, and one of these appeals is prosecuted to obtain a reversal of that judgment. After the judgment was obtained in the lower court, the appellants brought an independent suit seeking a new trial of the case in which judgment was rendered, and when this suit for a new trial came on to be heard, the lower court dismissed the petition, and from that judgment an appeal in the other case now before us is prosecuted.

The appellants, who are physicians and surgeons at Murray, had established there a hospital for the care and treatment of patients under their charge. On May 27, 1912, these surgeons attempted to remove from the neck of the appellee a goitre, but, on account of conditions that will be later described, were unable to complete the operation, and as a result the goitre was not removed.

After this, and in December, 1913, the appellee brought this suit against them, charging that, although they solicited that she submit to the operation at their hands, they were not skilful or competent surgeons and that when they performed, or rather attempted to perform, the operation, they did it in such a careless manner as to cause her great pain and suffering, and to leave her in a worse condition than she was before the operation was attempted. She further charged in her petition that in the attempt to perform the operation they made an incision for the purpose of removing the goitre, and upon their failure to remove it, packed the incision with gauze or some other substance and negligently failed to remove a portion of the packing, which was left in the incision for a period of some fifteen days, when she discovered its presence and had it removed. That by their negligence in failing to perform successfully the operation undertaken by them, and in failing to remove in proper time and manner the packing, and in failing to treat the wound made by the incision as it should have been, a running sore was created that caused her a great deal of annoyance and pain and subjected her to much trouble and expense.

The answer put in issue the averments of the petition and further pleaded that the failure of the incision to heal was due to the fact that the appellee did not 'observe their directions or requests, and by her own conduct produced the condition of which she complained.

The appellee testified, in substance, that while she was at Murray in the fall of 1911 Dr. Mason called at her house, and in the course of a conversation about the goitre, told her that it ought to be operated on, and would be a very simple operation; that afterwards, in May, 1912, she concluded to have the operation performed, and went from her home in Livingston County to Murray and saw the doctors one night, and on the next morning the operation was performed. That after the operation was over, she remained at the hospital about ten days, and that the last of the gauze packing that had been put in the incision was not removed until about ten days or two weeks after the operation was performed. That when this gauze was taken out the wound was giving out pus and the gauze emitting an offensive odor.

She further testified that from the time she left Murray, about two weeks after the operation was over, she saw the doctors at intervals and they cauterized the wound and treated it in other ways, but it did not improve, and at the time of the trial, in March, 1914, the wound made had not healed, and it was emitting pus and other matter and she suffered continually from pain produced by it.

Dr. Duley, testifying in behalf of appellee, said if gauze or packing was permitted to stay in a wound too long, it would cause an infection to set up that would prevent the wound from healing.

There was other evidence in behalf of appellee to the effect that the appellants, when they undertook the operation, thought it would be quite a simple one and did not anticipate the trouble they encountered, and also evidence conducing to show that the wound was not treated properly after the operation.

The evidence for the appellants showed that they were regarded as competent, skilful surgeons in the community in which they lived and operated, and it appears from their testimony that when they made an incision about half an inch deep for the purpose of removing the goitre, they came in contact with a large vein

that it was necessary to ligate in order to enable them to take out the goitre. That when they attempted to stop the flow of blood in this vein it was discovered to be in such a friable condition that it could not be ligated or closed by the usual methods, and so it became necessary to discontinue the operation and stop the flow of blood in this vein by putting pressure on it through packing inserted into the incision that had been made. That if the flow had not been stopped by this packing the patient would have died from loss of blood. That the condition of this vein could not have been known until it was reached in the course of the operation, and that when this condition was discovered, there was nothing else to do except what they did. That the packing was permitted to remain for a few days and finally all of it taken out except one piece, which was permitted to remain for several days longer until it was regarded as safe to remove it.

There was further evidence in their behalf to the effect that appellee left the hospital over their protest too soon, and when she went to her home in Livingston County, did not come back to have the wound treated as often as she should, and that on account of her failure to remain in the hospital or to return when she should for treatment, the wound did not receive proper treatment, and these causes prevented it from healing as it would have healed if proper treatment had been given it.

Restating it briefly, according to the evidence for the appellee, the appellants were not competent to perform the operation when it turned out to be more difficult than they had anticipated, and when the condition of the vein was discovered, they became alarmed on account of their inexperience and incompetency, and their carelessness in leaving the packing in the wound too long caused the infection to set up that prevented the place from healing. While the evidence on behalf of the appellants was to the effect that the course they pursued and the treatment they adopted was proper, and the trouble resulted from the fact that appellee left the hospital too soon and the wound did not have the proper treatment.

There was no suggestion in the evidence offered on the trial indicating any diseased or cancerous condition of the goitre, and, in fact, appellants did not operate sufficiently to enable them to discover any diseased or cancerous condition, because after they had made the

incision, and before they undertook to remove the goitre, they were met with the condition of the vein that caused them to suspend the operation.

After the trial and judgment, and in April, 1914, the appellee went to Rochester, Minn., to have an operation performed under the supervision of the Mayo Brothers, and it appears that the goitre was removed by a Dr. Judd, one of the operating surgeons in the Mayo establishment.

Dr. Judd testified that in the course of the operation he discovered a malignant, cancerous condition. Asked whether there was there anything to indicate how long the cancerous condition of the goitre had existed prior to the operation by him, he answered: "Had probably existed for some time, as indicated by the fact that the' wound had not healed after operation. Q. An operation for the removal of this goitre was attempted to be made by the defendants in May, 1912. Please state whether or not, in your opinion, the cancerous growth existed at the time of their attempted operation, and whether or not it was in active growth at that time? A. Yes. Q. Suppose, then, at the time of the attempted operation made by these defendants the blood vessels and tissues were so friable and tender and soft that you could not ligate them; state whether or not, in your opinion, cancer would have produced this condition? A. Yes."

He was further asked if, when the operation attempted by the appellants was made, a large vein was encountered over the capsule of the goitre that was so friable that threads would cut into it, and forceps would not hold it, and that the hemorrhage could only be controlled by packing gauze into the wound and applying sufficient pressure to stop the flow of blood, what, in his opinion, was the probable cause of the failure to heal, and he answered: "Cancerous condition of the goitre. Q. Would the malignant condition of the tissues have kept the wound from healing? A. Yes." He further said that the cancerous condition of the goitre at the time the appellants operated could not have been discovered by the incision they made or without an incision having been made into the goitre itself.

On the cross-examination he said he could not say with certainty when the goitre became cancerous, and also testified that it was removed with much difficulty.

He further said that he could not state what cause produced the cancer, and that he did not know what the condition of the goitre was in May, 1912. Asked how long a time after the attempted operation before the cancerous condition developed so that it could be discovered by an examination, considering the fact that the incision was made, he answered that "It was probably malignant at the time." He further said that the appellants probably could not have discovered the malignant condition at the time they attempted to remove the goitre unless they had made an incision deeper than the one made by them.

Dr. Blackford, who was not a surgeon, but who made an examination of the patient before the operation by Dr. Judd, testified as to the cancerous condition of the growth at the time, but could not express an opinion as to how long that condition had existed.

The new trial was sought upon the ground that the failure of the wound to heal was due to the cancerous condition of the goitre at the time the operation was attempted by the appellants, and not to any lack of skill or attention on their part. The evidence of the cancerous condition of the goitre was, we think, very material evidence in the case for the appellants, and while it is true that the suit was defended by the appellants upon the theory that the wound was progressing nicely after the attempted operation, and would have healed if the appellee had remained at the hospital, or had given it the proper attention, yet we do not think this defense should preclude the appellants from obtaining a new trial on the theory that the condition of the goitre at the time they operated, and its failure to heal, was due to the cancerous condition that existed. The appellants did not know this condition existed and did not prosecute the operation far enough to discover it; but that it was present when this operation was performed is, we think, shown with reasonable certainty by the evidence of Dr. Judd.

It is apparent from the evidence of the appellee and the witnesses in her behalf that the jury must have been largely influenced in returning the verdict they did by the fact that at the time of the trial the wound was not healed. It is also, we think, apparent from the evidence that the jury believed that the failure of the wound to heal was due entirely to the negligence or unskilful meth-

ods of the appellants. The verdict is not explainable or indeed authorized on any other ground.

The newly-discovered evidence, however, conduces to show that the failure of the wound to heal was due to the cancerous condition of the goitre, and with this evidence before them, the jury might have concluded that the condition of the wound was not due to lack of skill or to negligence on the part of the appellants, but to the diseased condition of the goitre. But, at any rate, this new evidence developed facts that might have had great weight with the jury in determining the cause that produced the condition of the wound from the time it was made until the date of the trial.

A case in many respects like this is Anshutz v. Louisville Ry. Co., 152 Ky., 741. In that case the suit was brought by Lillian Anshutz, a young married woman, to recover damages for personal injuries sustained in a railway accident. On the trial of the case the evidence conduced to show that surgical operations made necessary by the accident produced conditions that made it impossible that Mrs. Anshutz should ever bear children. There was a verdict and judgment in her favor for $7,000. A short while after this a petition for a new trial was filed and a new trial sought on the ground that Mrs. Anshutz had given birth to a child, which showed conclusively that the evidence of her barrenness had no foundation in fact. In holding that a new trial should have been granted on the discovery of this fact, the court said that from the very nature of the case it was impossible for the railway company to have contradicted the evidence that the accident and succeeding operation and consequence thereof had made it impossible for Mrs. Anshutz to bear children.

And so, in this case, the evidence showed that the diseased condition of this goitre was not discovered at the time of the operation by the appellants, or indeed until after the trial and judgment, and that the condition of the vein, which, in the judgment of the appellants, made it necessary to discontinue the operation, prevented them from making incisions that would have disclosed this diseased condition. Probably if they had been more skilful they could have controlled the flow of blood in this vein and have finished the operation, and the evidence for appellee tends to show that the failure of the wound to heal was due to the negligence or lack of skill

or want of attention on the part of the appellants. But this is a matter for the jury on another trial. There was, we think, sufficient evidence to take the case to the jury, but the new evidence makes it, we think, clear that the appellants were deprived of a defense on which they were entitled to rely and which they did not discover until after the trial.

It is suggested that the petition for a new trial did not state facts sufficient to constitute a cause of action, and also urged that the failure to support the averments of the petition by affidavits of the witnesses, by whom the newly-discovered evidence could be made, was fatal to its sufficiency. A new trial was sought in the manner pointed out in Section 344 of the Civil Code, and when a new trial is sought in the manner pointed out in this section it is not necessary that the petition should be accompanied by affidavits.

It will be observed that under Section 340 a new trial may be granted, on motion showing newly-discovered evidence, within the time prescribed in Section 342. When a new trial is sought on motion within the time allowed by Section 342, then, as provided in Section 343, the grounds for the new trial must be supported by affidavits. But when a new trial is sought under Section 344, a different practice prevails, and the practice in this class of cases has been laid down by this court in Smith v. Chapman, 153 Ky., 70, and National Concrete Construction Co. v. Duvall, 153 Ky., 394. It should be said, however, that so much of the opinion in the Duvall case as contains at least an intimation that the petition for a new trial under Section 344 should be supported by affidavits, is misleading, as affidavits, in support of a motion for a new trial on the ground of newly-discovered evidence, are necessary only when the new trial is sought on a motion filed within the time allowed by Section 342, and are not necessary when the new trial is sought by petition under Section 344. Under Section 344 a petition must be filed, and this petition must set out the grounds upon which the new trial is sought, according to the rule announced in the Chapman case. If the petition is sufficient, and an answer be filed, the parties may, as provided in Section 344, take the evidence either by depositions or by witnesses examined in court.

The judgment on the verdict assessing damages is affirmed, but the judgment on the appeal from the order ·

dismissing the petition for a new trial is reversed, with directions to enter a judgment setting aside the verdict and granting the defendants in this case a new trial. Whole court sitting.