## STANDARD INVESTMENT COMPANY, Appellant, v. HOYT et al.

### Division Two, June 28, 1901.

Practice: NEW TRIAL: NEWLY-DISCOVERED EVIDENCE. Complainant was the execution purchaser of certain realty alleged to belong to defendant H, and sued to set aside certain conveyances of the property as fraudulent. Defendant H testified that the property had been purchased by him with money belonging to his sister, in whose name the title stood, and who had furnished him with about $24,000 in money in 1879 and 1883, which money he had deposited in a bank in his own name. Subsequent to the decree in favor of the defendants, the complainant discovered evidence that defendant H had testified in another suit that his sister gave him $8,000 in money to invest in 1882, which he put in his safe, and did not open any bank account for his sister at all until 1889, and that he had kept the money in his safe all the time. *Held*, to authorize the grant of a new trial.

Appeal from Clay Circuit Court.—*Hon. E. J. Broaddus,*
Judge.

Reversed and remanded.

*Hunter M. Meriwether* and *Jas. A. Gordon* for appellant.

(1) The defendants are estopped by the recitals in the trustee's deed which they received, accepted and retained, and under which they claim title, to deny the truth of the facts therein set forth. Bigelow on Estop., pp. 354, 355; Herman on Estop., pp. 726, 741, 889; 1 Greenleaf on Ev. (15 Ed.),

secs. 21, 23; 2 Starkie on Ev., 30; 1 Phillips on Ev., 410; Hasewritter v. Kirshoffer, 79 Mo. 241; St. Louis v. Wiggins Ferry Co., 15 Mo. App. 227; Dickson v. Anderson, 9 Mo. 156; Clamorgan v. Green, 32 Mo. 185; Lajoy v. Primn, 3 Mo. 529; Dureth v. Briggs, 47 Mo. 356; Reed v. Austin, 9 Mo. 923; Tyler v. Hall, 106 Mo. 319; Stevenson v. Saline Co., 65 Mo. 425; Jackson v. Roberts, 7 Wend. 83; Jackson v. Vanderbeyer, 17 Johns. 49; 11 Am. and Eng. Ency. of Law, p. 392; Douglas v. Scott, 5 Ohio, 197; Stowe v. Wise, 7 Conn. 214; Morris v. Wheat, 8 App. Cas. (D. C.) 386; Huntington v. Havens, 5 John. Ch. 26; St. Clair v. Jackson, 8 Cow. 585; Atlantic Dock Co. v. Leavitt, 54 N. Y. 40; Penrose v. Griffith, 4 Binn. 231; Simpson v. Eckstine, 22 Cal. 580; Buchannan v. Kimes, 58 Tenn. 275.   (2)   If Benjamin Hoyt's money furnished the consideration for the real estate, it is his property, and this fact can be shown by a preponderance of the evidence.   Condit v. Maxwell, 142 Mo. 266; Lionberger v. Baker, 88 Mo. 447; Jacobs v. Smith, 89 Mo. 673; Slattery v. Jones, 96 Mo. 216; Warren v. Ritchie, 128 Mo. 319; Boggess v. Boggess, 127 Mo. 305; Stivars v. Horn, 62 Mo. 473.

*Botsford, Deatherage & Young,* and *Simrall & Trimble* for respondents.

(1)   Our Missouri deeds of trust usually contain a provision that the recitals in the trustee's deed shall be prima facie evidence of the facts recited.   Whether this deed of trust contained that recital does not appear from the record, because that deed was not offered in evidence by plaintiff's counsel. The recital of the determination of the ownership of the $3,500 note, if made, was not necessary to uphold the sale by the trustee; the note was outstanding and presumably unpaid, and the fact of its being out and unpaid was sufficient to justify the

trustee to make a sale. The trustee could properly recite in his deed the fact that the note was due and unpaid but his recital of ownership was unnecessary; however, whether that recital was necessary or not it was only prima facie evidence of the fact. This results from the express provision of section 4371, Revised Statutes 1899, which provides that recitals in trustee's deeds shall be received as prima facie evidence of the truth thereof. So that whatever may have been the provision in the deed of trust, it follows from the provision of this statute that the recitals in his deed to Mrs. Smith are only prima facie evidence of the facts recited. The recitals in the trustee's deed from Porter to Mrs. Smith can not be used as evidence against the plaintiff, because the plaintiff is neither a party nor a privy to that deed, but on the contrary, is a stranger thereto. An estoppel, in order to be binding, must be mutual. If the recitals in the trustee's deed from Porter to Mrs. Smith are not binding on the plaintiff and can not be used in evidence against the plaintiff, then the plaintiff can not rely upon those recitals as against a party or a privy to the deed. Cottle v. Snydor, 10 Mo. 764; Jackson v. Woodruff, 1 Cowen, 276; Hempstead v. Easton, 33 Mo. 142; Glasgow v. Baker, 72 Mo. 441; Schenck v. Stumpf, 6 Mo. App. 381; Curtis v. Brown, 63 Mo. App. 432; Bigelow on Estoppel (5 Ed.), pp. 334, 335; Sundelin v. Sturtlors, 47 Pa. St. 411; Durrett v. Briggs, 47 Mo. 356. (2) The decree of the court below is fully supported by the testimony of the eight witnesses to which we have referred. The court below gave credit to those eight witnesses, and weighed their evidence as being the evidence of credible witnesses. Giving credit to those eight witnesses for the defendant, there is practically no evidence on the other side, but even if there was substantial evidence given in opposition to the testimony of those eight witnesses, this court would not review the conflict and assume to decide on which side was the greater

weight of the credible testimony in the case.    It was the province of the trial court particularly to determine the credit of the witnesses and the weight of the oral testimony given by them.    Erskine v. Lowenstein, 82 Mo. 309; Cox v. Cox, 91 Mo. 77; Parker v. Roberts, 116 Mo. 667; Short v. Taylor, 137 Mo. 525; Benne v. Schnecko, 100 Mo. 258; Rollins v. Rollins, 102 Mo. 567; Taylor v. Coyce, 97 Mo. 249; Judah v. Bank, 81 Mo. 204; Ford v. Phillips, 83 Mo. 529; Snell v. Harrison, 83 Mo. 652.

SHERWOOD, P. J.—By this proceeding plaintiff seeks to divest the title out of defendants and vest it in plaintiff, in certain real estate in Kansas City, Missouri, and to set aside and declare void certain deeds which evidence that title, and by which that real estate was conveyed to defendants.    The pieces of property thus litigated, are, first, the Lykins Place or Twelfth street property, and, second, the Sunnyside property.

After answering, defendants alleging prejudice against them of all of the judges of the Jackson Circuit Court and of the inhabitants of that county also, prayed a change of venue, which thereupon was awarded them to the circuit court of Clay county.

The petition sets forth that on the eighteenth day of March, 1892, a judgment was obtained against defendant, Benjamin Hoyt, in a case wherein the State of Missouri was plaintiff and Benjamin Hoyt was defendant, for personal taxes owing from the defendant and due said State of Missouri for the years 1886 to 1889, amounting in the aggregate to over two thousand dollars; the said judgment was appealed to the Supreme Court and afterwards affirmed in part and judgment finally entered up against Hoyt on the twelfth day of November, 1894; that in December of the same year execution was duly issued on said judgment, directed to the sheriff of Jackson

county, who, on the twelfth day of December, 1894, under and pursuant to said execution, levied upon the real estate above described as the property of defendant Hoyt; that on the same date said execution was duly filed in the office of the recorder of deeds of Jackson county, Missouri, setting forth said judgment and describing the property levied upon as required by statute; that proceeding under said execution, the sheriff duly advertised and sold all of the above-described property, and the plaintiff became the purchaser thereof at the sheriff's sale, and obtained a sheriff's deed therefor on the ninth day of March, 1895, which was duly recorded on the eighteenth day of March, 1895; that at the time said execution referred to was filed for record, as aforesaid, all of the above-described real property stood on the records in the name of the defendant, Sarah J. Smith, but that said property was in truth at that time owned by the defendant, Benjamin Hoyt, and that the said Sarah J. Smith, who is the sister of the defendant, Benjamin Hoyt, was simply a nominal trustee to hold the title of said property so as to prevent the same from being levied upon and seized as the property of Hoyt; that the Lykins Place, or Twelfth street property, was transferred to defendant, Sarah J. Smith, on the fifteenth day of September, 1890, by one David H. Porter, as trustee, under a deed of trust executed by one Frank Stevens to secure the payment of a certain note to one B. Miller; that at the time of said trustee's sale, the defendant, Benjamin Hoyt, was the legal owner and holder of the indebtedness secured by said deed of trust, and that at the sale said property was bought in, and he procured the deed to be made to his sister, Sarah J. Smith, for the purpose aforesaid, and that no consideration whatever passed from Sarah J. Smith to said trustee, or to any other person for said property, and that said conveyance to said Smith was merely voluntary.  And as to the Sunnyside property, the petition sets forth that the same

was conveyed to Sarah J. Smith by James and Mary Kehoe on May 12, 1894, and that the consideration for said conveyance was a note or notes owned by said Kehoe and wife to defendant, Benjamin Hoyt, which note or notes had been made by Mary E. Lyon to said Benjamin Hoyt on the twenty-second day of December, 1885, and a deed of trust given on that date to George H. English for the benefit of Benjamin Hoyt; that said deed of trust was afterwards foreclosed and the property bought in by Hoyt, though he procured the deed to be made to Sarah J. Smith, and that no consideration moved from Sarah J. Smith to said trustee for said property; that after said property had been levied upon by the sheriff and said levy duly recorded, the defendant, Benjamin Hoyt, did on the fourteenth day of January, 1895, procure the defendant, Sarah J. Smith, to make a conveyance of all said property to defendant, Susan C. Stevens, for the purpose of further hindering, delaying and defrauding the creditors of said Hoyt, and of so clouding the title as to prevent said property from being sold for a fair consideration at the sheriff's sale; that the defendant, Susan C. Stevens, within a few days thereafter executed to defendant, J. H. McGee, trustee, a deed of trust purporting to secure to Sarah J. Smith two notes of $2,250 each as part payment for the above-described real estate, and that on the same date the said Susan C. Stevens conveyed all of said property by a warranty deed to defendant, J. K. Miller Stevens; and it is set forth that in each of these cases, the transfers were without any consideration in fact, and merely for the purpose of clouding the title as aforesaid, and that each of the defendants knew at the time that said real estate had been levied upon and seized by the sheriff for the purpose of satisfying the judgment against the defendant, Benjamin Hoyt, as above mentioned.  Plaintiff prays for a decree to vest the title

Vol 164 mo—9

to all of said real estate in the plaintiff, and a finding that at the time of the levy, to-wit, on the twelfth day of December, 1894, the said defendant, Sarah J. Smith, was merely a trustee for defendant, Benjamin Hoyt, and adjudging fraudulent and void as against plaintiff, the conveyance from Sarah J. Smith to Susan C. Stevens and from Susan C. Stevens to McGee, trustee, and from Susan C. Stevens to J. K. Miller Stevens.

All of defendants answered; the answer of Sarah J. Smith admits that she acquired the Lykins Place property from D. H. Porter, trustee, and the Sunnyside property from George H. English, trustee. She admits that on the fourteenth day of January, 1895, she conveyed all of the said property to Susan C. Stevens; all the other allegations in the petition are denied. The answer of Susan C. Stevens admits that she paid no consideration for the property and that she took the title to said property, made said notes and deed of trust and warranty deed as a matter of accommodation to her brother, J. K. Miller Stevens, in order that his credit might not be impaired by giving the said notes and deed of trust. The answer of J. K. Miller Stevens admits the same fact admitted by other defendants, and he claims to have bought said property in good faith and for a valuable consideration. The answer of Hoyt admits the same fact as other defendants, but denies all other statements in the petition.

The evidence in this cause, largely contained in depositions, documents and other papers, was in substance and effect as follows:

That Benjamin Hoyt was a man of considerable means, who brought with him to Kansas City, in 1856, as much as $7,000 or $8,000 in money, and he engaged in loaning this money upon chattels and real estate, and in the wheat business; that afterwards, at various times, according to his own evi-

dence, he had a large amount of money and property of his own; that at one time he had as much as $10,000 in gold and at another time as much as $10,000 in United States government bonds; that he made $12,000 to $15,000 in one deal in 1893; that he sold certain real estate on Union avenue in Kansas City for $12,000 cash in the '70's, but he states that one-half of this money belonged to his sister, Mrs. Smith. No attempt was made by the plaintiff to trace the money and property of Hoyt at an earlier period than 1883, when it appears he opened a bank account in his own name in Kansas City with the banking house of Foster, Crouse & Company. It appeared that he sent from New York to Miller Stevens in Kansas City in 1879, $7,000 by express; Hoyt said that this money belonged to Mrs. Smith, but he also stated that when he came to Kansas City a few weeks afterwards and had a settlement with Miller Stevens, Stevens was a few hundred dollars short and he gave a chattel mortgage to secure the amount due from him. This chattel mortgage is for the sum of $411; the mortgage is dated April 24, 1879, and shows that the notes were payable to Benjamin Hoyt. It also appeared from the evidence, that Benjamin Hoyt loaned to said Miller Stevens and his wife, E. H. Stevens, $1,200 in December, 1887, which amount was secured by a note given to Hoyt, and a chattel mortgage covering about everything that Stevens owned at that time. Stevens, in his evidence, asserts that he never received this money; he had forgotten about the mortgage, but inasmuch as the bank account of Hoyt on the same date shows a check for $1,180 which would be about the amount to be paid Stevens after deducting the ordinary expense of such a chattel mortgage, and inasmuch as this mortgage was filed for record, we may fairly assume that Stevens got the money. It appears from the bank account of Hoyt, that Hoyt deposited with said bank of Foster, Crouse & Company, between October

23, 1883, and March 25, 1884, the period of said account, the sum of $5,733.34, and in this account the checks are shown which were drawn against said account; a number of them appeared to have been made to M. Stevens and a number to "self" showing that Hoyt was using said money as his own. The balance due on March 27, was transferred to bank of Kansas City; the account in the bank of Kansas City is not shown, but it appears that on May 20, 1884, Benjamin Hoyt opened an account with the Traders Bank by depositing the sum of $1,000, and this account continued in the name of Hoyt from that day up until the time said bank was changed to the Union National Bank and on through said Union National Bank until June 11, 1889. In the two years of business with the Traders Bank, Hoyt had deposited with said bank $72,794.88 and in the three years with the Union National Bank he deposited in the aggregate, $37,870.33; this money was all in Hoyt's name and the checks upon the account were all made by Hoyt, but when the account was opened in the American National Bank on August 24, 1889, it was opened in the name of Mrs. Sarah J. Smith; the account continued with the American National up until October 9 of the same year, during which period Hoyt deposited and checked out $12,091.75. There is no assertion by any of the defendants that this money is different from that which had been carried in the Union National Bank, but Hoyt stated that it was a part of the same money, and that he continued to sign the checks on the American National Bank, simply signing them in the name of Mrs. Smith instead of his own name, and when the account was removed from the American National Bank it was taken to the Missouri National and continued there in the name of Mrs. Sarah J. Smith. On the other hand, it appeared that his sister, Sarah J. Smith, who lived in Connecticut, was a woman of very moderate circumstances. Her first husband, "Dan,"

having died in 1870 without any property whatever and she being for years engaged in a small millinery business which she conducted at her home; her home was valued by her at $1,200 and for a long time it was covered by a mortgage which was renewed from time to time by borrowing from other people and finally reduced to $700. Mrs. Dan became Mrs. Smith in 1874 or 1875, and Mr. Smith died in October, 1877; when Mr. Smith died he left between $2,000 and $3,000 in life insurance, which money was divided between Mrs. Smith and the children of Mr. Smith by a former wife. Mr. Smith was a man engaged in several businesses, in none of which he appeared to be successful, and according to the testimony of his son, Charles Smith, who was his business associate and bookkeeper, he had to borrow money to carry on his business, and at the time of his death had no property worth mentioning at all; his business having been practically destroyed by fire and the remainder turned over to creditors. It appeared that Isaac Smith was borrowing money at from eight per cent to nine per cent in order to carry on his business, and at the time of his death he left a large indebtedness, with practically no. property. The testimony of Charles Smith, the son, was substantiated by the testimony of Harrison Flint, who had been in business with Mr. Smith as a partner, and had loaned him money. At the time of the death of Isaac Smith, Sarah J. Smith administered on his estate, and by her inventory it was shown that the estate of her husband did not exceed $200 in value. Mrs. Smith, who testified by deposition, claimed that about a year and a half before his death, to-wit, 1875 or 1876, her husband gave her a present of $12,500 in United States bonds. She said these bonds were coupon bonds, and that for all the time afterwards and even during Mr. Smith's life, they kept them in a little tin box under the bed in their house in Connecticut; she did not know what interest they bore or any-

thing about them and two women were produced who testified that they saw the bonds at Mrs. Smith's house. They all agreed that the bonds were coupon bonds, and these two witnesses, who claimed that the bonds were spread out before them, said that they had one coupon attached. Mrs. Smith testified that Benjamin Hoyt sold these bonds for her and took the money for investment in Kansas City; that he sold about $7,000 in 1879 and the balance in 1882 or 1883, and Hoyt testified that when he sold the bonds, he received for them a considerable premium; they both said that Hoyt collected the interest on these bonds for years, but neither of them remembered the rate of interest they drew, nor anything else about the bonds, except that they were United States coupon bonds. Mrs. Smith testified that she had been in business for herself for a number of years prior to 1883 in a small way as a milliner, but she testified that she "didn't make much out of it." She admitted having been sued for a bill contracted in her business and judgment obtained against her because, as she states, she had lost her receipt; this was prior to the time when she stated that she turned over to Hoyt and Miller Stevens $7,000 to be invested in Kansas City for her; she says she took no receipt and there was never any writing of any kind between her, Hoyt and Stevens. Hoyt and Stevens also testified that there was no writing, not even a check to evidence the payment of this money. The parties in their evidence differed greatly as to the amount which had been turned over by Mrs. Smith and received by Hoyt and Stevens for investment. Hoyt testified that he had received $24,000 in "original money" from Mrs. Smith during the time referred to, but she does not make it out anything like that sum. Mrs. Smith testified that she had never received any returns from this investment, except now and then a little interest.

It was admitted by Hoyt that no bank account had ever

been opened in the name of Mrs. Smith in Kansas City prior
to the one opened in the American National Bank in 1889.
Hoyt testified on the trial of this case that the money he de-
posited in the various banks in his name was Mrs. Smith's
money, being a part of the money received from the sale of the
United States bonds, but he showed no bank account where
he kept his own money during this period, or any other period.
Several checks were produced showing that Hoyt was using
this money as his own and for his personal expenses. Hoyt's
testimony on this point was exactly contrary to his testimony
given on the eleventh day of June 1894, in a deposition taken
in another case. At that time he stated that he had not put
this money of Mrs. Smith's in any bank, but put it in his safe,
and that he never opened any account in any bank in Kansas
City for or on behalf of Mrs. Smith prior to the time he opened
the account in the American National Bank. He further
stated in this deposition that he did keep his own money in
the bank. This is important as it was shown that the $3,500
note, which was the consideration for the Lykins Place lots,
was purchased by a check given on the Union National Bank
which account stood in Hoyt's name. It appears from the
evidence that all loans made prior to October, 1883, were made
in the name of Benjamin Hoyt, but about that time the Kan-
sas City assessor got after Hoyt with regard to the assessment
of his personal property. The taxbill read in evidence showed
that prior to that time Hoyt's assessment was $1,000 in valua-
tion, but that in the fall of 1883, for the taxes of 1884, his
assessment was raised to $15,000. Hoyt also testified that he
was having trouble with the tax authorities. This taxbill
showed that his assessment was continually raised until 1889,
when it was put at $30,000. In the fall of 1883 Miller
Stevens began taking chattel mortgages in the name of Sarah
J. Smith, and thereafter the instruments recorded were in her

name.   Miller Stevens and his clerk both testified that on this business they were getting five per cent a month; that is, they made a loan of $100 and required the maker to give a note and mortgage for thirty days and it was $5 a month to renew it or $2.50 on a $50 note.

All of the defendants admitted that there was no consideration paid by Sarah J. Smith for any of this property at the time of the trustee's sale, but they based her title upon the ownership of the notes which were foreclosed.   To controvert this claim plaintiff produced documentary and record evidence as follows:   As to the Lykins Place lots it was shown that Hoyt bought the $3,500 note from B. Miller and paid B. Miller with his own check against his own bank account in the Union National Bank.   This deed of trust was recorded on the thirteenth day of June, 1887, and Hoyt's bank account shows that on the next day, to-wit, on the fourteenth day of June, it was charged with the $3,500 check.   This deed of trust was foreclosed by the trustee on September 13, 1890, and the trustee, Porter, recited in the trustee's deed that the foreclosure was made at the request of Benjamin Hoyt, who was the legal owner and holder of the indebtedness secured by the deed of trust.   The amount realized at the trustee's sale was not sufficient to cancel the note, and a few days afterwards, to-wit, on the sixteenth day of September, 1890, Benjamin Hoyt sued Frank Stevens and B. Miller in the circuit court of Jackson county for the balance due on the note, and obtained judgment against B. Miller, in Hoyt's name, for $2,786.   Afterwards, to-wit, on March 21, 1891, there was a compromise between Benjamin Hoyt and B. Miller of all their differences, and they entered into a written agreement; this agreement relates to the $3,500 note and judgment thereon and Lykins Place lots, which had been foreclosed.   It is set forth in the record and recites that B. Miller agrees to pay to

Hoyt the sum of $1,750, which is to be in addition to the property on Twelfth street (Lykins Place lots) which was sold under the deed of trust, this property to be held by said Hoyt, or those to whom he had it conveyed, free from any claim by said Miller. There is nothing in this agreement which in any way indicates that the money which Hoyt paid and which was due him, belonged to any other person than Hoyt.

As to the Sunnyside Place property, the evidence showed that in December, 1885, a note was made by Mary E. Lyon and C. E. Lyon to Benjamin Hoyt, and the deed of trust given by said parties to Geo. H. English for Hoyt to secure the payment of said note. This note and deed are set forth in the record. There is no evidence that this note had ever been assigned to Mrs. Smith, and all of the defendants admitted that there was no consideration paid by Mrs. Smith at the time of the trustee's sale; this property was foreclosed and by Hoyt's direction deeded to Sarah J. Smith; both Sunnyside Place lots were in the same condition. It also appears from the evidence of James Kehoe that he purchased these lots subject to the two $500 notes which he assumed and agreed to pay, and that afterwards at the solicitation of Hoyt he conveyed the property to Sarah J. Smith without any further consideration except the fact of his liability on the notes. It is important to observe that the testimony of Kehoe as to the ownership of these notes is of no value because he states that he learned they belonged to Mrs. Smith from the records, and that he had no other information. But the records show, as we have seen, that the notes were payable to Hoyt and the deed of trust was to secure their payment to Hoyt.

As a strong indication of the tendency to fraudulent deeds by these parties, we call special attention to the testimony of Kehoe. He explains that he made deeds to this Sunnyside property to his wife through Mrs. Smith in order

to· defraud his creditors, and he states that Benjamin Hoyt was the man who did the business.

Plaintiff showed, for the purpose of discrediting the testimony of Ben Hoyt and Sarah J. Smith, that under the statutes of Connecticut, Sarah J. Smith was required to list for taxation all property owned by her wherever situated and that she had made oath to numerous lists in which she specified her home in Connecticut, but swore that she had no other property. It was also shown in evidence by a deposition given by Stella Smith, Mrs. Smith's daughter, several years ago, that she did not know that Mrs. Smith had any property in Kansas City, although she stated she was familiar with her mother's affairs. It was shown that Benjamin Hoyt had for several years sworn falsely as to his personal property in Kansas City; that the assessors had notified him that it was a duty to give in all personal property owned by him or in his possession and control, and that he had been giving in and swearing to lists stating that he had personal property in value ranging from $100 to $500, during the very time when his bank accounts showed thousands of dollars to his credit.

It also appeared in evidence, and was not denied, that the day before the date set by the sheriff of Jackson county for disposing of the real estate levied upon by him as aforesaid, a preliminary restraining order was prayed by Sarah J. Smith to restrain the sheriff from making the sale, and a few days thereafter Sarah J. Smith transferred the property to Susan C. Stevens, sister of Miller Stevens, who in turn transferred it to Miller Stevens, who according to his own testimony was a pawnbroker, and for years engaged in the chattel mortgage business, and Miller Stevens pretended to be an innocent purchaser for value, without knowledge of the fact that the property had been levied upon and advertised for sale.

It also appeared from the evidence that as soon as these

sales were made the injunction suit was dismissed. On this record, presenting the evidence above set forth, plaintiff contends:

First: That Benjamin Hoyt purchased those notes with his own money, and as they all admitted that there was no other consideration for the property, it was his property, and liable to be sold for his debts, and the plaintiff is entitled to a decree as prayed.

Second: That as to the Lykins Place, or Twelfth street lots, the defendants are estopped, by the solemn recital in the trustee's deed, from denying the fact that Benjamin Hoyt was at that time the owner and holder of the notes, and that, therefore, as to this property plaintiff is entitled to a decree as prayed, independently of any other evidence, except the admission made by all of the defendants that there was no consideration paid by Sarah J. Smith at the sale or afterwards.

There was evidence on behalf of defendants which was to some extent of a contrary effect of that above recited, but it would not seem of sufficient force to overcome that above mentioned, and in addition to that consideration, it is to be remembered that one of the grounds of the supplemental motion for a new trial was that Benjamin Hoyt, one of the defendants, and the principal witness and mainstay for himself and the other defendants, testified in the present cause that he had received from his sister, Mrs. Sarah J. Smith, for investment in Kansas City, "about $24,000 original money," while in another cause, that of Glasner et al. v. Western Warehouse and Storage Company, the same witness, in his deposition given on the eleventh day of June, 1894, testified, "that he began to act as the agent of Sarah J. Smith in Kansas City in 1882 or 1883. That about this time she gave him *eight thousand* dollars in currency, while he was in Connecticut, which currency he brought to Kansas City; that she has not

sent any here since that time; that he put this money in his safe and did not open any bank account in the name of Sarah J. Smith at that time; *that he never did open any account for or on behalf of Sarah J. Smith* in any bank until he opened the account in the Missouri National or the American National Bank; that he opened the account in the American National Bank about 1889 or '90, and afterwards in the Missouri National Bank." Upon being asked how he had kept all of her money prior to that time his answer was, *"In my safe."*

On the basis of such newly-discovered testimony, testimony of such a totally variant character from that given in the present trial, testimony not merely of a cumulative nature, testimony which would clearly admit the application to Hoyt's testimony of the maxim, *falsus in uno, falsus in omnibus,* the court should indubitably have granted a new trial; the situation loudly called for such a course and it was error to refuse such new trial. [State v. Murray, 91 Mo. 95; State v. Bailey, 94 Mo. loc. cit. 315; 1 Graham and W. on New Trials, 172; 3 Id. 1053-4-5-6-7; Keenan v. People, 104 Ill. 385; Casey v. State, 20 Neb. 138, and cas. cit.; Bishop New Crim. Proc., sec. 1279.]

The testimony as above quoted, was of distinct and independent facts; and there was no laches imputable to plaintiff in their subsequent, instead of their prior discovery. They constituted not only admissions of the strongest character against Hoyt, himself, but they showed beyond peradventure that his testimony was absolutely unworthy of belief.

But apart from what has just been said, we are by no means satisfied with the result otherwise reached in this cause. We regard the testimony as pointing very strongly towards a different finding and ruling from that made by the lower court.

To the end that this cause may be tried more in accordance with the facts in evidence and with the experience of

common life, and the ordinary, orderly and usual methods of transacting business, and the presumptions arising therefrom, the decree of dismissal will be reversed and the cause remanded.   All concur.