247 S.W.2d 792 (1952)
CURRY
v.
THOMPSON et al.
No. 42706.
Supreme Court of Missouri, Division No. 1.
April 14, 1952.
*794 Thos. J. Cole, St. Louis, Keith P. Bondurant, Kansas City, for appellant.
Barkley M. Brock, Clinton, F. M. Kennard, Kansas City, E. E. Thompson, Sam Mandell, Kansas City (Popham, Thompson, Popham, Mandell & Trusty, Kansas City, of counsel), for respondent.
CONKLING, Presiding Judge.
Guy A. Thompson, as trustee, defendant below, appealed from the judgment in favor of Richard W. Curry, plaintiff below, for $35,000 damages in the latter's personal injury action. While performing his duties as switchman-foreman plaintiff was on top of a box car and doing interstate switching for defendant in the Kansas City freight yards on July 23, 1950. Plaintiff testified the engine moving the cars made a sudden, violent and unusual stop which caused him to be thrown off the car and injured. The jury's verdict was for plaintiff for $40,000. The trial court required the filing of a remittitur of $5,000 as a condition precedent to overruling the motion for new trial. Upon this appeal there is no question raised that plaintiff did not make a submissible jury case, and no contention of error is made as to the evidence admitted or the instructions given.
The trial began February 28, 1951. After the trial, and after defendant's motion for new trial had been overruled defendant filed his notice of appeal in the trial court on May 26, 1951. The appeal notice was filed in this court on May 29, 1951. The transcript was filed here August 24, 1951. On November 12, 1951, defendant filed in this court his "Motion To Remand Cause To Circuit Court Of Henry County For New Trial On The Basis Of Newly-Discovered Evidence, Or, In The Alternative To Include Such Newly Discovered Evidence As Part Of The Record On Appeal And To Consider The Same On The Question Of Damages." Defendant attached to that motion certain exhibits presenting certain after-trial facts, and suggestions in support of the motion. Thereafter plaintiff filed suggestions in opposition to defendant's above motion with attached exhibits and certain affidavits as to the above mentioned after-trial facts. On December 10, 1951, we ordered that defendant's above motion be taken with the submission of the case. Thereafter the parties to the cause filed their briefs in this court. The appeal in the cause was orally argued and submitted at our January, 1952 session.
The points raised in defendant's instant brief concern only, (1) the above mentioned motion, (2) that which is denominated in such motion as "newly-discovered evidence" (hereinafter called after-trial facts), and (3) the alleged excessiveness of the verdict. The issues on this appeal make unnecessary any further statement of facts as to the manner in which the accident occurred.
When plaintiff was thrown from the top of the freight car he "took a flip in the air and landed on (the small of) my back over the rail." He crawled over the rail into the clear. Suffering pain, he was then taken to St. Mary's Hospital by ambulance. For 21 days he was in that hospital under the care of Doctor Castles, of the Missouri Pacific Hospital Association. X-rays revealed fractures of the 11th and 12th ribs on the right, and of the transverse processes of the 1st and 2nd lumbar vertebrae. The 11th rib was "completely torn apart * * * with a separation of approximately ½ of an inch between the fragments." The 12th rib was "torn loose from the attachment to the vertebra, and two fragments were torn loose from the lower edge, with a half inch separation." The transverse process fracture of the 2nd *795 lumbar vertebra was accompanied by a complete separation of the fragments. Plaintiff was placed on a hard bed, taped and given opiates. He was catheterized and blood was passed in his urine, there having been "enough contusion of the tissues around the kidney and enough jar of the kidney itself" to produce blood cells. Plaintiff also sustained bruises, had stiffness in his shoulders and pains in the back over his kidneys, and lost 24 pounds while in the hospital. Discharged from the hospital August 12, 1950, he took diathermic treatment two or three times a week for some months.
On November 16, 1950, plaintiff went to Doctor Poorman as a private patient. Called by plaintiff, that doctor testified he found a spastic condition of plaintiff's neck muscles; that the force of plaintiff's fall damaged the surrounding nerves, ligaments and muscles; that plaintiff had a tremor of the eye-lid, a tenderness over the sciatic nerve, a limp, a rigidity over the lower abdomen, bladder and right kidney, and a limitation of motion of his back. Doctor Poorman testified there was very little change in plaintiff's condition from November 16, 1950, up to trial time; that plaintiff was not physically able to work; that plaintiff's injuries were "permanent and progressive", and that "these injuries to the muscles, those displacements that give a little variation to the upright spine, grow more severe with age."
Doctor Korth examined plaintiff a week before the trial. Called as a witness by plaintiff Doctor Korth testified he found muscle spasm in the mid-back; an abnormal lordosis with a right lateral twist in the mid-back; a neck misalignment due to muscle spasm; a loose portion of the 12th rib (2½ inches by ¼ inch) lying loose in the back tissues; a 1/8 of an inch separation of the 2nd lumbar transverse process; and damage to the right kidney. The doctor further testified that plaintiff would be "permanently disabled from doing such hard work as railroad switching", or, "any kind of manual physical labor", and that plaintiff's injuries "are reasonably certain to be permanent."
Plaintiff testified that at trial time he suffered pain, dizziness, numbness, stiffness, sleeplessness; and that he tired out easily, and had massages and infra-red treatments at his home. Plaintiff also testified he had returned to his switching work for defendant on September 13, 1950, and felt all right the first day; that he worked a week and felt pain "every time I would jump off or on a car"; and that he then took a nine day leave. He then worked seven days, had the same trouble and "got another nine day leave of absence". He thereafter worked another six days. Thereafter additional x-rays were made. He testified he was then advised not to go back to work, "that my back wasn't healed."
All of the above detail as to plaintiff's injuries, their affect and results appears from the testimony adduced on the trial.
We come now to the after-trial facts appearing in defendant's above noted motion which was filed in this court on November 12, 1951, upon the basis of which defendant moved to have the cause remanded to the Henry County Circuit Court, or in the alternative moved us to consider such after-trial facts on this appeal upon the question of the amount of damages.
Briefly stated, but not detailed, such after-trial facts are to the effect that on August 27, 1951, plaintiff applied to defendant to go back to his former work of switching stating to defendant's superintendent that he had recovered from his injuries; that plaintiff was thereupon returned to the doctor for examination; that such examination was made; that plaintiff returned to switching work for defendant September 13, 1951; that of the next 56 days, ending November 8, 1951, plaintiff worked at his former work as switchman for defendant a total of 42 days. Photostatic copies of plaintiff's original time slips for such work, affidavits of the superintendent, the examining doctor, the time keeper and plaintiff's switch foreman and fellow employee as to the work and character of work done by plaintiff were filed with the motion. Suggestions in opposition to the above motion, together with *796 certain affidavits explanatory of and bearing upon the after-trial facts were filed here by plaintiff on November 26, 1951. Further affidavits were thereafter filed here. To further detail the after-trial facts presented by each of the parties upon the motion would unduly extend this opinion.
We agree that under the above circumstances this court had exclusive jurisdiction of defendant's motion filed here in this cause November 12, 1951. The trial court had then lost jurisdiction of the cause. We also agree that the exhibits presenting the after-trial facts were timely filed here, and that there was no lack of diligence in filing them. Plaintiff did not apply to defendant to return to his former employment until August 27, 1951, and did not actually return to his switching work until September 13, 1951. Our attention could not have been called to any after-trial facts until they came into existence. And defendant, under these circumstances, was entirely justified in not filing the motion and supporting exhibits here until November 12, 1951. The conclusions we hereinafter state are not based on those matters. But the legal effect of the after-trial facts appearing from the motion, from the exhibits attached thereto, from plaintiff's countervailing exhibits and affidavits filed with his suggestions in opposition and from the record before us, presents quite another problem.
Defendant emphasizes that plaintiff's evidence on the trial tended to establish that plaintiff was (1) physically unable to work, (2) unable to do any kind of manual physical labor, (3) permanently disabled from doing such hard work as railroad switching, and, (4) that plaintiff's evidence tended to show his injuries "are reasonably certain" to be permanent and progressive. Defendant points also to the further facts that plaintiff's evidence showed his total wages for 1949 were $2839.55, and that his life expectancy was 30.35 years. Plaintiff's instruction P-5 told the jury that if they found for plaintiff, in determining the amount of plaintiff's damages, they could consider the "character and extent of such injuries and whether they are permanent in nature" and whether plaintiff's "capacity to work and labor is reasonably certain to be impaired in the future."
It should here be noted however that the question now before us is narrowed in scope by the very contention in defendant's brief that the after-trial facts would have "materially affected the result of the verdict and judgment", and that "without doubt would result in reducing the amount of the verdict"; and is limited by defendant's alternative contention that we consider such after-trial facts in considering whether the amount of the instant judgment is excessive. The question is further narrowed by the fact that the above motion and the after-trial facts go solely to the accuracy of the medical opinions as to whether plaintiff, in fact, could return to railroad switching or other hard manual labor.
We here observe, also, that upon the trial defendant introduced the testimony of Doctor Walker, Doctor Elliott and Doctor Castles. Doctor Walker told the jury that so far as his examination of plaintiff's bone structure is concerned there was no reason why plaintiff, at trial time, could not perform manual labor. Doctor Elliott told the jury that based on his examinations and tests of plaintiff, that before "very long" plaintiff could return to his usual work. Doctor Castles told the jury that plaintiff could not then (at trial time) do manual labor, but, "in a matter of a month or so, with gradually increasing exercise, I would be perfectly willing to put him back to a job of switching box cars," etc. So, in this case five doctors (above referred to) testified as medical experts. Each doctor, to some extent, made a prognosis as to the extent of plaintiff's future disability, and the extent and duration of plaintiff's injuries. Such prognosis was in the nature of opinion evidence, a forecasting by each of them as to what might reasonably be expected in the future as to plaintiff's physical condition and ability to do railroad switching work, or other manual physical work.
As supporting the contention and prayer of defendant's above motion, which contention is renewed here in his briefs, that the after-trial facts above noted are sufficient *797 of themselves to either remand the cause for new trial, or, to compel our consideration of them on the question of the amount of damages, defendant cites and relies on such cases as Anshutz v. Louisville R. Co., 152 Ky. 741, 154 S.W. 13, 45 L.R.A., N.S., 87, Devine v. Wells, 300 Mo. 177, 254 S.W. 65, Standard Investment Co. v. Hoyt, 164 Mo. 124, 63 S.W. 1093, Lamb v. Feehan, Mo.Sup., 276 S.W. 71, and Pearce v. Rogers, Mo.App., 15 S.W.2d 874.
In the Anshutz case, supra, plaintiff while enciente, was injured in April, 1910. Her child was born in September, 1910. In April, 1911, plaintiff was hospitalized and surgically operated. All of her surgeons in that operation testified on the subsequent trial of her personal injury action in December, 1911, that the operation was made necessary by her injuries in April, 1910, and that in that operation they removed from her body both of her fallopian tubes, the entire left ovary, and a part of the right ovary. Her surgeons also testified that by the operation she was made barren, and that as a result of the accident there had developed a tumor in her abdomen which would eventually have to be removed surgically. The jury returned a verdict for plaintiff for $7000. Defendant appealed. On June 3, 1912 plaintiff gave birth to a boy baby. As authorized in Kentucky, defendant filed a new action setting up the above after-trial facts, and therein sought a new trial in the original action. A new trial was granted and plaintiff appealed. The two appeals were considered together. The appellate court affirmed the granting of the new trial of the original case upon the application of the rule that, where the facts are of "such conclusive nature, or even of such decisive or preponderating character as that it would, with reasonable certainty, have changed the verdict, or materially reduced the recovery, a new trial should be granted, if it is satisfactorily shown why the same was not discovered and produced at the trial." [152 Ky. 741, 154 S.W. 15.]
In the Devine case, supra [300 Mo. 177, 254 S.W. 69], newly-discovered pre-trial facts were presented to the trial court, which granted a new trial because thereof, and this court held that "it cannot be said clearly to appear that the trial court acted arbitrarily or unreasonably in exercising the discretion with which it was invested." That so distinguishes the Devine case that it is not authoritative here. The facts quickly distinguish Standard Investment Co. v. Hoyt, supra, but limitations upon space forbids analysis here. In Lamb v. Feehan, supra, the alleged newly-discovered evidence was presented to the trial court. What is there said cannot rule this case. In Pearce v. Rogers, supra, it was contended that perjured testimony had been given upon the trial. We have examined all the cases cited by defendant and the Anshutz case is the only one closely enough parallel to the instant case upon the facts to be seriously considered. And defendant places his main reliance on the Anshutz case.
The Anshutz case, supra, has been many times cited and has been quite widely referred to by the appellate courts in many jurisdictions. In some later cases the courts of Kentucky have ruled that the facts of the cases then and there before them warranted the application of the rule applied in the Anshutz case. Some courts in other jurisdictions have found that the facts of the case then instantly being considered warranted following the rule of the Anshutz case. In other cases under more varied facts, other courts have refused to apply that rule. The courts of Kentucky in later cases such as Woods v. Kentucky Traction and Terminal Co., 252 Ky. 78, 65 S.W.2d 961, Powell v. Galloway, 229 Ky. 43, 16 S.W.2d 492, and National Concrete Const. Co. v. Duvall, 153 Ky. 394, 155 S.W. 757, 761, distinguished the facts of the Anshutz case from the facts then before them in those later cases. And many cases in other jurisdictions seem to apply the rule followed in Woods v. Kentucky Traction & Terminal Co., supra. The cases in which the Anshutz case has been followed, or discussed, or mentioned, or distinguished are too many to undertake to analyze them or to even here refer to them by name. And it would be unprofitable to do so.
The Anshutz case facts are readily distinguishable from our case here. In the Anshutz case the medical opinions there *798 given by the doctors (and upon which the verdict was there based) were bottomed upon an assumption of certain physical facts (prior removal of both fallopian tubes) which assumption the after-trial facts demonstrably proved to be erroneous. In the instant case the questions made an issue by the evidence (and now pertinent) are as to the extent and severity of plaintiff's injuries, i. e., whether such injuries are so permanent as to prevent plaintiff ever returning to his former railroad switching employment. Those issues were here litigated and there was expert opinion evidence upon every side of those issues. In the Anshutz case the verdict was based on evidence that the operation had rendered plaintiff barren but the after-trial facts showed that a child was developing at the time of trial. In Woods v. Kentucky Traction & Term. Co., supra, in discussing the Anshutz case, the court said [252 Ky. 78, 65 S.W.2d 966]: "If this operation had been performed, as testified to by the doctorsthat is, if the fallopian tubes had been removedMrs. Anshutz could not have had a baby, but she did have one, and the tumor turned out to be a boy." Mrs. Anshutz' barrenness was not there an issue of the evidence for in that case there was no testimony to contradict that of the surgeons who operated her that they had actually removed her fallopian tubes and that naturally, surgically and physiologically, she had been thereby rendered barren. But in our case here the permanency of plaintiff's injuries, their extent and severity, and whether he could ever return to his former railroad switching employment were all issues of the evidence.
We do not find that defendant has ever alleged that the above stated after-trial facts in this case amount to fraud or deceit or malingering or that they establish plaintiff was not in fact injured. It is now contended by defendant that these after-trial facts amount to proof of after-trial recovery, and show plaintiff's injuries to have been but temporary in that he could and did return to railroad switching work. Defendant's testimony by Doctor Castles established that plaintiff was in fact injured substantially. Upon oral argument defendant candidly conceded that there is no suggestion here that fraud entered into the procurement of this judgment. And our conclusions hereinafter stated do not affect the right of a litigant to void a judgment procured by fraud.
As a matter of public policy, courts generally look with disfavor upon after-trial facts which go no further than tending to establish that the bodily condition of a plaintiff in a personal injury action was not in fact as bad as may have been represented by the opinion testimony of medical experts given to the jury, or, that a plaintiff's injuries and abnormal condition were not in fact permanent or progressive, as may have been testified to by some expert witness. And courts are, and should be, reluctant to order a new trial, and thus permit the relitigation of once litigated issues, where the point upon which the new trial is sought was in issue upon the trial and was actually there litigated, unless the after-trial facts (such as actually appeared in the Anshutz case, supra) are of such decisive and conclusive character as to render a different result reasonably certain. And this rule should certainly obtain with respect to oral testimony of the character now under consideration. Woods v. Kentucky Traction & Terminal Co., supra, Powell v. Galloway, supra, National Concrete Const. Co. v. Duvall, supra, Johnson v. Rule, 105 Vt. 249, 164 A. 681, and cases there cited, Gilson v. Washington Water Power Co., 93 Wash. 480, 161 P. 352, Rogers v. Goforth, 121 W.Va. 239, 2 S.E.2d 903, O'Malley v. Illinois Pub. & Printing Co., 194 Ill.App. 544, Nicholson v. Clinchfield Coal Corp., 154 Va. 401, 153 S.E. 805, Wagner v. Loup River Public Power Dist., 150 Neb. 7, 33 N.W.2d 300. See also, Southard v. Bangor & A. R. Co., 112 Me. 227, 91 A. 948, L.R.A.1915B, p. 246. Many other cases could be cited which apply the rule that if the after-trial facts would tend merely to mitigate damages, that a new trial should not be granted.
Disclosure of after-trial facts in this court which could amount only to a demonstration that medical opinions of prognosis adduced upon a trial were merely incorrect or inaccurate does not compel or necessarily warrant relitigation. This must be especially true in a case wherein correct medical opinions pertaining to prognosis *799 were adduced and considered by the jury. We need not here rule a different factual situation, such as in the Anshutz case, where the after-trial facts demonstrated that the assumptions upon which the medical testimony in that case was based, in truth and in fact did not exist. Nor need we here rule that a trial court necessarily would have abused its discretion had it granted a new trial on the after-trial facts shown here, assuming their discovery and presentation during the period of the trial court's jurisdiction.
We think the above rule is sound, founded on reason and that we should apply it here. Nature, if given time, is a great healer of many afflictions, and many conditions. It is widely recognized (even in medical circles) that most injured persons improve after their litigation has ended. If a rule contrary to the above were announced or applied, then, in any action wherein the trial testimony had shown that following an injury an arm or leg or other part or organ of a plaintiff's body had become impaired in strength or usefulness at trial time, and, where the after-trial facts were that following the trial such impairment in strength or usefulness had disappeared and that the member or organ was normal, it could and would be contended the same issue must be again litigated. It is public policy that litigation sometime end.
From the above it must follow that we will not remand the cause to the circuit court for retrial upon the above after-trial facts. It also follows that we must decline to consider the after-trial facts of plaintiff's return to his railroad switching work in September, 1951, in determining the question of the alleged excessiveness of the instant judgment. If, in determining whether the judgment appealed from is excessive, we were to consider facts that were not before the jury at the time of its verdict we would then be usurping the function of the jury. If we considered the after-trial facts we would be arbitrarily, and only by guesswork, assuming what the amount of the jury's verdict would have been had the jury considered the after-trial facts which are known to us but were not known to the jury. Our holding that a given verdict is excessive or not excessive must be based upon our consideration of the same (not different) evidence from that considered by the jury. Thus, if, as we have above held, the after-trial facts here disclosed do not warrant the relitigation of the issue of damages, then it must follow that we cannot consider these after-trial facts in determining whether the verdict is excessive. The above motion filed November 12, 1951, is overruled. The facts of this case preclude any other ruling. But we are not to be understood to even imply that the rule hereinabove applied in this case would rule other dissimilar situations.
There now remains but defendant's last contention that the verdict is excessive. Upon this point defendant cites and relies upon such cases as Osburn v. Kansas City Southern Ry. Co., 360 Mo. 813, 230 S.W. 2d 856, Prince v. Kansas City Southern Ry. Co., 360 Mo. 580, 229 S.W.2d 568, Hill v. Terminal R. Ass'n of St. Louis, 358 Mo. 597, 216 S.W.2d 487, Williams v. Illinois Central R. Co., 360 Mo. 501, 229 S.W.2d 1, 20 A.L.R.2d 322, and others. Plaintiff relies on such cases as Abernathy v. St. Louis S. F. Ry. Co., Mo.Sup., 237 S.W.2d 161 and Cruce v. Gulf, Mobile & Ohio R. Co., Mo.Sup., 238 S.W.2d 674. We have studied those cases, and many others not cited in the brief of either party.
These questions of seeking (so far as humanly possible) to attain and maintain a standard of uniformity in personal injury judgments are exceedingly difficult. No two cases present the same facts as to injuries, resulting disability, and other important factors.
This accident occurred July 23, 1950. Plaintiff testified that beginning on September 19, 1950, he returned to his switching work, and, out of the next 38 days, he worked 20 days, and then was advised not to do that work. Plaintiff also testified he had done some painting; that shortly before the trial he had done some tire work and some inventory work for a welding company; that that inventory work did not make him nervous; that clerical work did not bother him, and he could do such work with "rest periods." One of his doctors *800 testified plaintiff could do "an office job". Plaintiff has had previous experience in railroad clerical work.
While the record shows plaintiff to have a high expectancy, it also discloses he will have a future earning capacity. He had sufficiently recovered in less than two months, so that, by September 19, 1950, he was back trying to do his same switching work. But he was unable to continue that work. In the consideration of this question we consider economic conditions and other pertinent factors. Under present economic conditions even office work of a clerical type, which work plaintiff can do (as well as switching work which his physicians testified he cannot do) is paid for in a much higher wage bracket than formerly.
We have carefully examined the testimony in this transcript. While the trial court required a $5,000 remittitur, as we view the circumstances presented by the record now before us we think the present judgment of $35,000 is still excessive, but that the rule of uniformity will be more nearly attained if the present judgment finally stands for $25,000.
It is, therefore, ordered that if respondent-plaintiff, within fifteen days will enter and file a remittitur of $10,000 as of the date of the judgment, then the instant judgment will be affirmed for $25,000 as of its date; otherwise the judgment will be reversed and the cause will be remanded for new trial. It is so ordered.
All concur.