NEW AMSTERDAM CASUALTY COM-
PANY, Petitioner,

v.

James J. JORDAN, Respondent.

No. A–8885.

Supreme Court of Texas.

June 20, 1962.

Rehearing Denied Oct. 3, 1962.

Fulbright, Crooker, Freeman, Bates & Jaworski, Jerry V. Walker and Larry W. Starr, Houston, for petitioner.

John H. Holloway, Houston, for respondent.

STEAKLEY, Justice.

This is a compensation case in which respondent (plaintiff below) had judgment

based on jury findings of total incapacity for fifty-five weeks and partial incapacity for seventy-five additional weeks. Respondent appealed and urged nine points of error. The Court of Civil Appeals classified the "principal contentions" of respondent as six, overruled five, and sustained the sixth described by the Court of Civil Appeals as "The Trial Court abused its discretion in denying a new trial on the ground of material 'newly discovered evidence' of additional surgery performed on plaintiff after the trial of the case but before Motion for New Trial was acted on." One Justice dissented on motion for rehearing in the latter respect. 353 S.W.2d 256.

We granted writ of error on petitioner's single point of error which urged that "The Court of Civil Appeals erred in holding that the trial court abused its discretion in refusing to grant respondent a new trial upon grounds of newly discovered evidence."

Respondent was injured on September 12, 1957, and underwent back surgery on November 4, 1957. The case was tried during the week of October 15, 1959, but the judgment of the trial court was not entered until July 25, 1960. On August 22, 1960, respondent filed his amended motion for new trial based, in part, on the proposition that on August 18, 1960, he had undergone a second back operation necessitated by the injury of September 12, 1957, which resulted in his temporary incapacity extending longer than the seventy-five weeks found by the jury in the trial of the case.

We mention at this point that the procedure for determining liability of the association for medical services furnished to or received by an injured employee after the date of judgment, provided by the amendment to Section 5 of Article 8307, Vernon's Ann.Civ.St. (Acts 1957, 55th Leg., p. 1186, Ch. 397) is not involved here. It is to be noted in this connection that no such procedure is provided in contemplation of post-trial developments bearing on the question of liability for a greater or lesser period of incapacity than found upon trial of the case, and as embodied in the judgment of the court.

The principles governing post-trial evidence developments were long ago established by this Court. In Mitchell v. Bass, 26 Tex. 372 (1862), Chief Justice Wheeler wrote:

"* * * In deciding upon motions for new trials on the ground of newly discovered evidence, courts have found it necessary to lay down stringent rules, and to scrutinize such applications with much strictness, to prevent the mischiefs which would otherwise be produced. * * * Such motions are received with careful scrutiny, and are held to address themselves very much to the discretion of the court; and where the court has refused an application made upon this ground, the appellate court will not reverse, unless it shall appear that the court below has not exercised its discretion according to the established rules of law. * * * Where there can be any doubt of the justice of the verdict, to' refuse a new trial, when the party has really discovered new evidence of a' conclusive tendency, would be against justice and precedent; and by new evidence is meant proof of some new and material fact in the case which has come to light since the trial."

In holding that the newly discovered evidence under review in the above case was not cumulative and afforded a proper basis for new trial, the court continued:

"* * * It is not proposed to multiply witnesses to any distinct fact or circumstance testified to by witnesses upon the trial; but it brings to light a new and independent truth, which the testimony upon the trial sought, but in vain, to prove.

"* * * The new evidence relates to the proof of a fact by means so dissimilar from that used upon the trial, as to afford no ground for treat-

ing it as cumulative merely of the evidence upon the trial. It is of so decisive a nature, so material to the just decision of the matter in controversy, * * *."

Chief Justice Gould in Wolf v. Mahan, 57 Tex. 171, 172 (1882), said:

"The reason of the rule forbidding a new trial for the purpose of admitting cumulative testimony does not apply where the party has had no fair opportunity to procure and adduce evidence on an issue raised by his adversary for the first time, during the trial, by the introduction of evidence which could not be anticipated. The reason of the rule is that public policy, looking to the finality of trials, requires that parties be held to diligence in preparing their cases, and that they shall not be allowed a second trial because they mistook the amount of testimony requisite. Powell v. Jones, 42 Barb. 30 [42 N.Y. 30]. But the policy which seeks to limit continued litigation does not apply where a party has had no fair opportunity to present his side of the case—no real day in court. In discussing this subject, Chief Justice Wheeler said: 'It is desirable that there should be an end of litigation with as little delay and expense as possible, consistently with the great end of litigation—a correct decision of causes according to their real merits; but it should always be sought in subordination to the great end to be attained.' Mitchell v. Bass, 26 Tex. [372] 377."

In Houston & Texas Central Railway Co. v. Forsyth, 49 Tex. 171, 180 (1878), the Court discussed the problem of cumulative evidence as follows:

"* * * Cumulative evidence, as has been often said, is additional evidence of the same kind to the same point. Although evidence tends to prove the same proposition as that previously introduced, yet it is not cumulative when it is of a different character, and merely tends to prove the former proposition by proof of a new and distinct fact. 'The meaning of the rule, says Judge Woodbury, in Aiken v. Bemis, 3 Wood. & Min., [348] 358, 'cannot be to exclude, as cumulative, newly-discovered evidence of subordinate points or facts bearing on the general question; for in such a view, no new trial for new evidence could ever be obtained, all new evidence relating, as it must if it be pertinent, to the general ground or general fact put in issue before. But it must mean that new evidence to a subordinate point or fact, is not competent where the subordinate point or particular fact was before gone into; because it is then cumulative or additional as to that fact.' "

■ "A new trial will not be granted on the ground of newly-discovered evidence, unless it is made to appear that it has come to the knowledge of the applicant since the trial; that it could not have been sooner discovered by the exercise of diligence; that it is not merely cumulative; that it is not for the purpose of impeachment." Conwill v. Gulf, C. & S. F. Ry. Co., 85 Tex. 96, 19 S.W. 1017 (1892).

See also McDonald, Texas Civil Practice, Vol. 4, Sec. 18.16; 31 Tex.Jur., Sec. 81, p. 90 et seq.; Texas Employers' Insurance Ass'n v. Moser (Tex.Civ.App.), 152 S.W.2d 390.

The principles thus announced have been applied to the problem of granting new trials upon the ground that subsequent events show a more serious personal injury than indicated at the time of the trial. See 39 Amer.Jur., Sec. 176, p. 180, and annotations in 31 L.R.A.2d 1236, and 45 L.R.A., N.S., 87. Respondent relies on the Kentucky case of Anshutz v. Louisville R. Co., 152 Ky. 741, 154 S.W. 13, 45 L.R.A.,N.S., 87, which was the subject of the foregoing annotations. The analysis of this case by

the Supreme Court of Missouri in Curry v. Thompson, 247 S.W.2d 792, 31 A.L.R.2d 1225, is particularly relevant:

"The Anshutz case facts are readily distinguishable from our case here. In the Anshutz case the medical opinions there given by the doctors (and upon which the verdict was there based) were bottomed upon an assumption of certain physical facts (prior removal of both fallopian tubes) which assumption the after-trial facts demonstrably proved to be erroneous. In the instant case the questions made an issue by the evidence (and now pertinent) are as to the extent and severity of plaintiff's injuries, i. e., whether such injuries are so permanent as to prevent plaintiff ever returning to his former railroad switching employment. Those issues were here litigated and there was expert *opinion* evidence upon every side of those issues. In the Anshutz case the verdict was based on evidence that the operation had rendered plaintiff barren but the after-trial facts showed that a child was developing at the time of the trial. In Woods v. Kentucky Traction & Term. Co., supra, in discussing the Anshutz case, the court said [252 Ky. 78, 65 S.W.2d [961] 966]: 'If this operation had been performed, as testified to by the doctors—that is, if the fallopian tubes had been removed—Mrs. Anshutz could not have had a baby, but she did have one, and the tumor turned out to be a boy.' Mrs. Anshutz' barrenness was not there an issue *of the evidence* for in that case there was no testimony to contradict that of the surgeons who operated her that they had actually removed her fallopian tubes and that naturally, surgically and physiologically, she had been thereby rendered barren. But in our case here the permanency of plaintiff's injuries, their extent and severity, and whether he could ever return to his former railroad switching employment were all issues *of the evidence.*"

Missouri-Kansas-Texas R. Co. v. Evans, 151 Tex. 340, 250 S.W.2d 385, considered by the majority of the Court of Civil Appeals to be controlling in the instant case, is likewise distinguishable; cancer as the cause of incapacity was not "of the evidence" in the trial of the case. As said in the dissenting opinion below, Evans involved "an entirely new, unknown, different and unknowable cause of incapacity," which was discovered by a post-trial operation. The operation did not cause or result in additional or extended incapacity; it revealed cancer as the possible cause of the whole incapacity and, as this Court pointed out in its opinion, cancer as a possible cause was not mentioned in the trial of the case and was not before the jury in any respect in passing upon the merits of the case. In the words of this Court in Mitchell v. Bass, supra, the evidence of cancer in Evans was "new evidence of a conclusive tendency"; it brought to light "a new and independent truth," and was "decisive" in nature and "so material to the just decision of the matter in controversy."

■ On the other hand, the after-trial evidence in the case at bar, consisting of a second back operation over three years after the injury, two years and nine months after the previous back operation, and ten months after the trial of the case, was not "dissimilar to that used upon the trial" and was "additional evidence of the same kind to the same point" as that introduced at the trial touching the question of respondent's incapacity. It is true that the second back operation was a new fact but it did not "bring to light a new and independent truth," and we do not think it can be said that respondent has not had his day in court or that the requirements for overriding the public policy requiring finality of trials have been met. Moreover, the evidence does not, in our opinion, partake of a conclusiveness and decisiveness upon the merits of the

case to the extent of showing that justice has not been attained and that, as a matter of law, the trial court abused its discretion in denying the motion.

Apart, then, from the question of whether or not the post-trial facts alleged in the motion for a new trial were sufficiently established at the hearing (which we do not decide), we hold that the Court of Civil Appeals erred in reversing and remanding the case for another trial upon the ground of newly discovered evidence.

This, in turn, requires our consideration of respondent's cross assignments of error to the refusal of the Court of Civil Appeals to "consider" his second, third, and fourth points of error relating to the exclusion of certain testimony and to respondent's exceptions to Special Issue No. 9 in the charge of the trial court, together with the cross assignments of error to the action of the Court of Civil Appeals in overruling respondent's fifth and sixth points of error based upon alleged jury misconduct and prejudicial and inflammatory jury argument.

■ Respondent's second and third points of error in the Court of Civil Appeals complained of the exclusion of the testimony of the witness McAtee, an employee of United Gas Company, with respect to the general employment policies of the company pertaining to an applicant who had undergone back surgery, together with the exclusion of a pamphlet issued by United Gas for general use by its examining physicians.

It appears from the bill of exceptions taken by respondent to the ruling of the trial court in sustaining objection to the testimony of the witness McAtee that the witness had no personal knowledge of respondent's application for employment with the company; further, his testimony as developed by respondent under his bill of exceptions was altogether general in nature as to the policy of the company. It also appears that respondent was permitted to tes-

tify that he had failed to obtain employment at United Gas Company and this presumably because of his back injury. We hold that the exclusion of the testimony was not error.

■ Respondent's fourth point of error below urged error in Special Issue No. 9, which read: "What do you find from a preponderance of the evidence to be the average weekly wage earning capacity of James Jordan during the existence of such partial incapacity, if any, you have so found" on the ground that the issue was a comment on the weight of the evidence in failing to employ the words "if any" following "earning capacity," thereby assuming that respondent did have earning capacity during his partial incapacity. Respondent cites the case of Kirk v. Marshall (Tex.Civ.App., 1952,) 247 S.W.2d 454, no writ history, wherein it was held that omission of the words "if any" after the words "exemplary damages" does "assume that the jury has found there was exemplary damage," and was error.

The transcript does not include the complete charge of the court or any definitions which may have been given. The special issues are shown and disclose that the jury found that respondent's total incapacity was temporary and would continue for fifty-five weeks; that the injury sustained by respondent was a producing cause of partial incapacity; that the partial incapacity was temporary and would continue for seventy-five weeks; and, in answer to Special Issue No. 9, that the average weekly wage earning capacity of respondent during the partial incapacity was $24.00. We assume that the court instructed the jury with respect to partial incapacity in harmony with the accepted definition thereof which comprehends some earning capacity but whether or not this was done Special Issue No. 9, as worded, properly presupposes an earning capacity if the jury in answer to previous issues had found that the injury sustained by respondent was a producing cause of a period of partial incapacity. This easily

distinguishes Kirk v. Marshall, supra, and we see no impropriety in the wording of the issue as constituting a comment on the weight of the evidence.

We agree with the decision of the Court of Civil Appeals overruling respondent's fifth and sixth points of error and pretermit discussion thereof.

The judgment of the Court of Civil Appeals is reversed, and that of the trial court is affirmed.